**Janice KNOX, Plaintiff,**

v.

**The FIRST NATIONAL BANK OF CHICAGO, Defendant.**

**No. 93 C 2005.**

United States District Court, N.D. Illinois, Eastern Division.

Dec. 13, 1995.

James D. Montgomery, Patricia Janezich, James D. Montgomery & Associates, Ltd., Chicago, IL, Mary Rose Strubbe, Brigham & Kane, Waukegan, IL, for Janice Knox.

Janice Knox, Chicago, IL, pro se.

Lynn Adrian Goldstein, Julie A. Lepri, Linda Brinker, First National Bank of Chicago, Chicago, IL, Roger L. Taylor, Leonard A. Gail, Sallie Gamble Smylie, Kirkland & Ellis, Chicago, IL, for First National Bank of Chicago.

## MEMORANDUM OPINION AND ORDER

COAR, District Judge.

Defendant, First National Bank of Chicago ("FNB") has moved for an order in limine to prevent plaintiff, Janice Knox ("Knox") and her counsel, for eliciting testimony at trial concerning certain alleged race-related comments by Knox's former manager, Judith Kadubec. Knox alleges that since 1990, she has been demoted and denied promotions due to her age and race in violation of Title VII and the Age Discrimination in Employment Act of 1967 ("ADEA"). Kadubec was Knox's manager from 1991 until 1993.

FNB seeks to exclude the following race-related comments allegedly made by Kadubec:

1. "If I have some money I'm going on vacation, and I'm going to go to Africa and get me some African monkeys;"

2. Kadubec announced at a staff meeting that the department softball team's name for 1991 was "Lynch Mob," a

play on words based on department manager's name, Andrew Lynch;[1]

3. Kadubec told Knox in early 1989 that another FNB manager, Jeff Anderson, had told Kadubec that the department was "going to get a nigger manager" (*i.e.*, Henry Roberts); and

4. Kadubec commented to Knox's former manager, Kenneth Wilfinger, prior to 1989, that she (Kadubec) and Knox had the same initials and that she was referred to as "Jack," while Janice was referred to as "Black Jack."

 As an initial matter, the court concludes that the first two comments allegedly made by Kadubec are not racially based and cannot reasonably be interpreted as a racial slur or derogatory comment. The motion in limine is therefore granted with respect to these two statements.

FNB moves in limine to bar testimony concerning the remaining two racially-based comments on the grounds of relevancy and potential prejudice because Knox cannot establish a nexus between these comments and the employment decisions at issue. FNB also argues that the comment concerning a "nigger manager" cannot be attributed to Kadubec because she was merely repeating the comments of another employee. Finally, FNB argues that the statements are too remote in time to be relevant. Knox argues in response that the comments are relevant and admissible as circumstantial evidence of discriminatory intent under the direct and indirect methods of proving her race and age claims, citing *Troupe v. May Department Stores Co.*, 20 F.3d 734 (7th Cir.1994), and *EEOC v. Northwestern Mem. Hosp.*, 858 F.Supp. 759 (N.D.Ill.1994).

 It is well established that there are two ways to prove discrimination in violation of Title VII and the ADEA: through direct proof of discrimination; and through the in-

direct, burden shifting method of proof established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and refined in *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). *See Hill v. Burrell Communications Group, Inc.*, 67 F.3d 665 (7th Cir.1995); *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1122 (7th Cir.1994) (ADEA claim). Under the direct method of proving intentional discrimination, a plaintiff may introduce direct or circumstantial evidence of discrimination. *See Kormoczy v. Secretary, HUD*, 53 F.3d 821, 823 (7th Cir.1995) (*citing Troupe*, 20 F.3d at 736). Direct evidence is that which can be interpreted as an acknowledgement of the defendant's discriminatory intent.[2] *Id.* Circumstantial evidence is evidence that can provide a basis for drawing an inference of intentional discrimination. *Id.* One type of circumstantial evidence of intentional discrimination "consists of suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn." *Troupe*, 20 F.3d at 736 (citations omitted).

 Evidence of a decision maker's occasional or sporadic use of stereotyped remarks or derogatory comments about an employee's age or race is generally insufficient, without more, to establish a violation of Title VII or the ADEA. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 250, 109 S.Ct. 1775, 1791, 104 L.Ed.2d 268 (1989) (plurality); *id.* at 277, 109 S.Ct. at 1804 (O'Connor, J., concurring). Nevertheless, a plaintiff may present direct proof of discriminatory intent by introducing stray, stereotyped racial remarks if the remarks are made by a decision maker, *see McCarthy v. Kemper Life Ins. Cos.*, 924

---

**1.** Apparently, all Kadubec did was announce the team's name at a staff meeting. Knox has not tendered any evidence that Kadubec was in charge of the softball team or decided the team's name.

**2.** The Seventh Circuit in *Troupe* cited *Mojica v. Gannett Co., Inc.*, 7 F.3d 552, 561 (7th Cir.1993) (en banc), as an example of a case in which

direct evidence of discrimination was found. In *Mojica*, the plaintiff's direct evidence of discrimination consisted of her testimony that the radio station's general manager told her that she would not be promoted to a more lucrative [disc jockey] shift because she was not a "black male." *Id.* at 561.

F.2d 683, 687 (7th Cir.1991) (*citing La Montagne v. American Convenience Prod., Inc.,* 750 F.2d 1405, 1412 (7th Cir.1984)); are causally related to or have a nexus with the employment decision at issue, *see Sarsha v. Sears, Roebuck & Co.,* 3 F.3d 1035, 1038 (7th Cir.1993); *Monaco v. Fuddruckers,* 1 F.3d 658 (7th Cir.1993); *Hong v. Children's Mem. Hosp.,* 993 F.2d 1257, 1266 (7th Cir.1993); and are proximately related in time to the employment decision. *Hill,* 67 F.3d at 669; *Smith v. Firestone Tire & Rubber Co.,* 875 F.2d 1325, 1330 (7th Cir.1989). As the Seventh Circuit explained in *McCarthy,* "Unless the remarks upon which plaintiff relies were related to the employment decision in question, they cannot be evidence of a discriminatory discharge." 924 F.2d at 687.

Contrary to Knox's argument, the Seventh Circuit did not abandon the nexus requirement when it concluded in *Troupe v. May Department Stores Co.* that circumstantial evidence, including "suspicious timing, ambiguous statements oral or written," was admissible as direct evidence of discriminatory intent. Rather, the *Troupe* court simply clarified the types of circumstantial evidence that may be considered under the direct method of proving impermissible discrimination. Thus, in *Hill v. Burrell Communications Group, Inc.,* 67 F.3d 665 (7th Cir.1995), the Seventh Circuit concluded that the plaintiff, a white woman in a minority dominated company, failed to present any direct evidence of discrimination because she could not establish a nexus between the decision maker's statement—"I believe I found a minority candidate to replace Sandra [plaintiff]"—and her termination. The Seventh Circuit explained that a nexus was not established because the comment neither established that plaintiff was terminated because she was white nor "demonstrate[d] that Morris [the decision maker] sought to hire a new supervisor from a minority group." *Id.* at 667; *see also Koelsch v. Beltone Electronics Corp.,* 46 F.3d 705, 709 (7th Cir.1995). Even the authority cited by Knox, *EEOC v. Northwestern Mem. Hosp.,* recognizes that a nexus must be established between the alleged racial comments and the employment decision at issue under the direct method of proof. *See* 858 F.Supp. at 767 (*citing Randle v.*

*LaSalle Telecommunications,* 876 F.2d 563, 569 (7th Cir.1989)). The *Northwestern Mem. Hosp.* court cited the *Randle* decision as approving "the lower court's holding that under the direct method, a plaintiff's evidence 'must not only speak directly to the issue of discriminatory intent, it must also relate to the specific employment decision in question.' " *Id.*

Since Knox has not established a nexus between Kadubec's remaining two statements and the specific employment decisions at issue, the motion in limine is granted to the extent that Knox would have offered Kadubec's statements as direct evidence of discrimination. Knox contends, however, that Kadubec's racial comments are nonetheless admissible under the indirect, burden shifting method of proof despite the lack of a nexus. As authority for this argument, Knox cites *EEOC v. Northwestern Mem. Hosp.,* 858 F.Supp. 759 (N.D.Ill.1994). In that case, the court denied a motion for summary judgment on the grounds that patently derogatory and sexist remarks by the decision maker were sufficient to raise a question of fact about discriminatory intent even though the sexist remarks were not related to the contested employment decision. The court reasoned that a reasonable trier of fact could infer from evidence of the employer's discriminatory attitude that the employer's stated reasons for its employment decision were a mere pretext for discrimination. *Id.* at 767. A panel of the Seventh Circuit reached the same conclusion in *Futrell v. J.I. Case,* 38 F.3d 342, 346–47 (7th Cir.1994).

In *Futrell,* the appellate court reversed the district court's grant of summary judgment in the employer's favor, concluding that the plaintiff had introduced sufficient evidence of age discrimination under the indirect method of proof to present his claim to a jury. The plaintiff in that case introduced evidence that the defendant's officials "allegedly made remarks regarding the preferability of youth over age." *Id.* at 347. The district court, relying on *McCarthy,* concluded that these general remarks did not constitute evidence of discriminatory intent because the remarks were not contextually related to the employment decisions at issue. *Id.* The appellate

court concluded, however, that *McCarthy* only required the existence of a nexus between the discriminatory comment and the challenged employment decision only if a plaintiff has chosen to prove discriminatory intent with direct evidence. *Id.* It concluded that a nexus was not required where a plaintiff presented the stereotyped remark as circumstantial evidence to support an inference of discrimination under the indirect method of proof. *Id.* The court recognized that a discriminatory statement by itself was insufficient to prove a discriminatory discharge under the indirect method of proof, but reasoned that the statement in conjunction with other evidence may be sufficient to present a prima facie case or fulfill the plaintiff's burden of persuasion under the indirect method of proof. *Id.*

The decisions in *Futrell* and *Northwestern Memorial Hospital* are at odds with other Seventh Circuit authority. In *Hong,* a different panel of the Seventh Circuit concluded that a nexus between an allegedly discriminatory remark and an adverse employment decision was required under the indirect method of proof. 993 F.2d at 1266. A nexus was required because "evidence of the remarks, without more, does not give rise to an inference of discrimination." *Id.* In *Hill,* discussed *supra,* the Seventh Circuit most recently concluded that a nexus between the statement and the challenged employment decision was required even under the indirect method of proof. In that case, the plaintiff argued that the decision maker's alleged statement that she had "found a minority candidate to replace [plaintiff]" established circumstantial evidence of discriminatory intent under the indirect, burden shifting method of proof. The court concluded, however, that the statement did not support an inference of racial discrimination where the evidence established that plaintiff had not been terminated because she was white. Without such a nexus, the court concluded that a reasonable factfinder could not conclude that the decision maker's ambiguous comment revealed a discriminatory intent. *Id.* at 669.

■ This court agrees with the Seventh Circuit's positions in *Hong* and *Hill* that some nexus must exist between an alleged racial remark and the employment decision at issue under both the direct and indirect methods of proof before the remark can give rise to an inference of discriminatory intent. It makes no sense to impose the nexus requirement on racial comments offered as circumstantial evidence of discriminatory intent under the direct method of proof while failing to impose the same requirement on racial comments offered as circumstantial evidence of discriminatory intent under the indirect method of proof. If such a distinction were to be maintained, plaintiffs would always choose to introduce evidence of a decision maker's stray racial comments under the indirect method of proof. The risk of admitting a decision maker's sporadic racial remarks in the absence of some nexus is that a trier of fact may conclude that a decision maker acted in conformity with his or her perceived racial attitudes even though race may not have played any role in the decision whatsoever.

■ Accordingly, this court declines to follow the decisions in *Futrell* and *Northwestern Memorial Hospital* to the extent that they say that no nexus is required when the indirect method of proof is used. Determining when a nexus has been established is sometimes difficult. My review of the Seventh Circuit authority suggests that the analysis is simply whether the probative value of the comment outweighs any possible unfair prejudice that the statement may cause. Stated differently, is the statement or remark of the decision maker so remote in time or ambiguous that its probative value is *de minimis.* None of the statements attributed to Kadubec in FNB's Motion in Limine meet this test. At best, all of these statements are so ambiguous as to shed little or no light on the motivation behind any action taken by Kadubec toward plaintiff. Accordingly, in the absence of any evidence that relates Kadubec's alleged racial remarks to the specific employment decisions at issue, this court concludes that Knox may not elicit any testimony concerning any of Kadubec's alleged racial comments.

WHEREFORE, for the foregoing reasons, First National Bank's Motion in Limine to

Exclude Alleged Race–Related Comments by Judith Kadubec is granted.